IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

KINDRA LAKE TOWING, L.P.,
and BLACK DIAMOND MARINE
EQUIPMENT, INC.,

                **Plaintiffs,**

     **v.**

DONAT INSURANCE SERVICES,
LLC and KEN DONAT,

                **Defendants.**

           **Case No. 16 C 3916**

           **Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendants' Motion to Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6) [ECF No. 12]. For the reasons stated herein, the Motion is granted in part and denied in part. The Court grants the Defendants' Motion in dismissing Count II and III of the Complaint; it denies the Defendants' Motion with regards to Count I and IV.

## I.  BACKGROUND

The following facts are contained in Plaintiffs' Complaint and the attached exhibits, and are presumed true for purposes of deciding the motion to dismiss. *Gillman v. Burlington N. R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir. 1989).

Plaintiff Kindra Lake Towing, L.P. and Black Diamond Marine Equipment, Inc. ("Kindra" and "Black Diamond," or collectively the

"Plaintiffs") are owners of a barge. In 2013, Black Diamond entered into a contract with Foundation Theatre Group (the "Foundation") to lease the barge to it. Under the contract, called a Charter Party Agreement (the "CPA"), Foundation became the bareboat charterer of the vessel and obtained "exclusive control over the Barge" subject to the terms and conditions of the contract. (ECF No 1, Ex. A.)

The issues in this lawsuit relate to the insurance that Black Diamond required the Foundation to carry for the vessel. Section Nine of the contract between Black Diamond and Foundation imposed the following terms:

- Foundation is required "at its expense" to procure and maintain insurance for the barge. CPA Section 9(a).

- The insurance so procured must cover "all marine and hull risks, protection and indemnity insurance, pollution liability insurance, and such crew insurance as is required to completely protect the Owner [Black Diamond] from any and all liability or loss or damage from any party or parties whomsoever." CPA Section 9(a).

- The insurance must be "provided by reputable and solvent underwriters reasonably satisfactory to Owner [Black Diamond]." CPA Section 9(a).

- The insurance must fully protect Black Diamond. As the contract reiterated, "In the event of any loss or damage for which [no] reimbursement, or incomplete reimbursement, is made by underwriters, such deficit shall be paid by Charterer [Foundation]." CPA Section 9(a). Moreover, Section 10 of the CPA requires Foundation to "indemnify, defend and hold harmless the Barge and the Owner from any and all liabilities . . . arising directly or indirectly out of or in connection with the ownership, chartering, use, operation, custody, or maintenance of the Barge by the Charterer even if

- 2 -

caused in whole or in part by the negligence or other fault of the Owner or the Barge."

- Black Diamond should receive proof of the insurance. Per Section 9(b) of the CPA: "The Charterer [Foundation] shall furnish to the Owner [Black Diamond], preferably prior to Delivery of the Barge hereunder, and again at the time of each renewal or change in insurance, satisfactory evidence in a form reasonably acceptable to Charterer that the aforesaid insurance has been provided. Each policy will be endorsed to provide that no cancellation will be effective until the Owner has been given thirty (30) days notice of intent to cancel or ten (10) days notice if such cancellation is for non-payment of premium."

- Finally, Black Diamond required Foundation to list it "as well as any mortgagee of any Barge" that Black Diamond identifies "to be named as an additional assured" on the insurance policy Foundation obtained. CPA Section 9(b). On the policy eventually procured, Kindra was listed as an additional insured. Compl. ¶ 17.

Section Twelve of the CPA then specified that failure on the part of Foundation "to maintain insurance in accordance with the terms" of the contract shall be deemed a default. CPA Section 12(a). In the case of a default, Black Diamond was entitled to "enter and retake the Barge without legal process." CPA Section 12(b).

The Foundation retained the Defendants in this case, Donat Insurance Services, LLC and Ken Donat (collectively, the "Defendants" or "Donat"), to procure an insurance policy for the barge. Plaintiffs alleged that the Foundation properly instructed Defendants as to what insurance is required. Compl. ¶ 13. Specifically, Plaintiffs alleged that the Foundation informed

- 3 -

Donat that the insurance needed to cover "storms and sinking" of the vessel. *Id.* Plaintiffs also asserted that the Foundation communicated to the Defendants that "not only the Foundation, but also Kindra and Black Diamond, were to be protected by this insurance coverage." Compl. ¶ 14.

Defendants were insurance producers or intermediaries in the insurance business. Compl. ¶ 23. In this role, Defendants procured for the Foundation an insurance policy underwritten by Capitol Specialty Insurance ("Cap Specialty"). The policy properly named the Foundation as the insured and Black Diamond and Kindra, the Plaintiffs, as additional insureds. The Plaintiffs allege, however, that the policy did not provide the appropriate insurance that "Donat was instructed to procure by the Foundation and as specified by the CPA." Compl. ¶ 18.

This alleged inadequacy of the insurance the Plaintiffs discovered when, between the evening of October 31, 2014 and the morning of November 1, 2014, the barge (on which the Foundation had staged a haunted house) was sunk by a storm. Compl. ¶ 19. As Plaintiffs delivered the barge to Foundation in September 2014, the sinking of the vessel happened at most two months after delivery. Compl. ¶ 8. Subsequent to the sinking and attendant damage, Cap Specialty brought a declaratory judgment against the Foundation, Kindra, Black Diamond, and Navy Pier (where the barge was docked), claiming that the insurance it issued did not provide

coverage for the sinking of the barge. *See,* Compl. ¶¶ 20-22. The
declaratory judgment action is currently stayed before Judge John
Robert Blakey until November 9, 2016. *See, Capitol Indemnity
Corporation v. Foundation Theatre Group, Inc.,* 15-CV-09735, ECF
No. 65.

Kindra and Black Diamond have filed before this Court a four-
count Complaint against the insurance providers. Defendants seek
dismissal of Plaintiffs' Complaint in its entirety. Defendants
also seek dismissal of Count I through Count III individually on
separate legal theories. The Court will address each argument in
turn.

## II. <u>ANALYSIS</u>

### A. The Entire Complaint Cannot Be Dismissed on a Waiver Theory Because Plaintiffs Have Not Unequivocally Waived Their Rights.

Defendants argue that all counts of the Complaint should be
dismissed because Plaintiffs have waived their right to the
insurance specified in the CPA by not rejecting the insurance
policy the Foundation acquired. In particular, Defendants pointed
to language in the contract which stated that the insurance
required under the CPA "shall be provided by reputable and solvent
underwriters reasonably satisfactory to Owner [Black Diamond]."
Defendants argue that this language gave Plaintiffs the
"contractual right to reject any insurance procured by Foundation
that was not 'reasonably satisfactory' to them." By not

exercising this right, Plaintiffs have "thus found [the insurance] 'satisfactory'" and now cannot be heard to complain otherwise.

Plaintiffs countered that they have not waived their right under the provision above, and alternatively, that even if they did, this would not help Plaintiffs because the waiver would apply only to the Foundation — a party to the CPA — and not Plaintiffs. The Court finds that Plaintiffs' conduct as set forth in the Complaint does not constitute waiver and so does not address Plaintiffs' argument in the alternative.

### 1. *Waiver*

Waiver is a "voluntary and intentional relinquishment of a known and existing right." *Batterman v. Consumers Ill. Water Co.,* 261 Ill. App. 3d 319, 321 (Ill. App. Ct. 3d Dist. 1994). "An implied waiver of a legal right may arise when the conduct of the person against whom waiver is asserted is inconsistent with any other intention than to waive it." *Lehman v. IBP, Inc.,* 265 Ill. App. 3d 117, 119 (Ill. App. Ct. 3d Dist. 1994). Finally, "[t]he actions constituting the waiver must be clear, unequivocal and decisive." *Solai & Cameron, Inc. v. Plainfield Cmty. Consol. Sch. Dist. No. 202,* 374 Ill. App. 3d 825, 845 (Ill. App. Ct. 3d Dist. 2007)

In this case, the contract between Black Diamond and the Foundation required that the insurance the Foundation carried "be provided by reputable and solvent underwriters reasonably

satisfactory to Owner [Black Diamond]." Even assuming that Black Diamond took no step towards exercising this right, the right so guaranteed is arguably only the right to have "reasonably satisfactory" underwriters. Plaintiffs have not complained that the underwriter to the insurance policy, Cap Specialty, is not "reputable," "solvent," or otherwise not "reasonably satisfactory" to them. Plaintiffs instead are alleging that the insurance *policy* that Cap Specialty underwrote does not meet the requirements Defendants were instructed to meet. Plaintiffs cannot be said to have clearly, unequivocally, and decisively waived their right to this kind of insurance policy by not rejecting Cap Specialty as the underwriter.

Even if the language in the above contract provision is interpreted to refer to the insurance itself and not the underwriter, the fact that Plaintiffs had delivered the barge to the Foundation only one to two months before the vessel sank is significant. Black Diamond's failure to take steps to repossess the barge during this short period of time, as was its right under the contract should the Foundation "fail to maintain insurance in accordance with the terms of the Charter," is not conduct plainly "inconsistent with any other intention than to waive." For instance, it is possible that Plaintiffs were diligently using that period of a month or two to scrutinize the roughly 100-page long insurance policy provided by Cap Specialty, decide on a

course of action, or correspond with Foundation on the need for a different insurance policy.

## 2. Condition Precedent

In their response to Defendants' Motion to Dismiss, Plaintiffs distinguished cases where Illinois courts have found waivers from those where they have not on the ground that waivers are appropriate only where the contracts contained conditions precedent to the beginning of performance. In *Whalen v. K Mart Corp.,* 166 Ill. App. 3d 339, 342 (Ill. App. Ct. 1st Dist. 1988), the court encountered a contract where "[t]he express language . . . shows that the subcontractors agreed to obtain insurance before commencement of any work." Furthermore, the subcontractors were to submit proof of insurance to the plaintiffs for approval prior to any performance or payment. *Id.* The subcontractors performed under their contracts and were then paid, all without having obtained insurance or tendered proof of such insurance. *Id.* Under such circumstances, the lower court found that the plaintiffs had waived the requirement for insurance and dismissed their complaint against the subcontractors. The appellate court affirmed.

Likewise, the court affirmed a grant of a motion to dismiss in *Geier v. Hamer Enterprises, Inc.,* 226 Ill. App. 3d 372, 390-391 (Ill. App. Ct. 1st Dist. 1992) because the third-party plaintiff in that case had "waived any contractual obligation of [third-

party defendant] Coleman to procure liability insurance by its failure to require Coleman to provide certificates of insurance prior to the commencement of work or prior to Coleman's being paid in full when it completed the job."

While Plaintiffs compared *Whalen* and *Geier* to *Batterman,* the Court finds it instructive to compare *Whalen and Geier* to *Lehman* as well. In *Lehman,* the court reversed a motion to dismiss because it found no waiver in Plaintiff IBP's conduct. *Lehman,* 265 Ill. App. 3d at 118. Like in *Whalen* and *Geier,* the contract in *Lehman* stipulated that before beginning work, the defendant must provide the plaintiff with "certificates of insurance . . . substantiating the fact that the coverages required by this Contract are in effect." *Id.* Also like in *Whalen and Geier,* the defendant failed to do so, submitting only certificates that did not name the plaintiff as an additional insured as contractually required. Nonetheless, the plaintiff allowed work to commence. *Id.* Unlike in *Whalen* and *Geier,* however, despite allowing work, the plaintiff in *Lehman* "expressed its intent to enforce its contract rights by sending . . . [a] letter to [defendant] CCI requesting a renewal certificate that included IBP as an additional insured." *Id.* at 120. The court found that this conduct "does not indicate an intent to waive the coverage." *Id.*

The juxtaposition of *Whalen, Geier,* and *Lehman* indicates that a condition precedent is not what drives the different outcomes in

the cases. Instead, a condition precedent simply makes it clearer what a party's conduct signifies at a particular point in time. If a contract includes a condition that is supposed to be satisfied before performance begins, then it is easier to find the condition has been waived if performance has begun and the condition was not satisfied. This is true at least relative to a situation where a contract simply stipulates that something should be done. However, at the core, what matters is not whether there is a condition precedent in a contract, but how "clear, unequivocal and decisive" are the actions alleged to have constituted waiver. In the case at hand, because Plaintiffs' failure to repossess the barge in a two-month period is capable of inferences other than waiver, a dismissal on waiver grounds is inappropriate.

The Court finds that Defendants have not carried their burden in establishing waiver as an affirmative defense. *See,* Fed. R. Civ. P. 8(c) and *Lehman,* 265 Ill. App. 3d at 120 ("The burden of proof is upon the party claiming a waiver to prove the facts upon which he relies for such waiver."). Defendants' Motion to Dismiss all counts of the Complaint on this ground is denied.

### B. Count I Cannot Be Dismissed Because Defendants Owed Plaintiffs the Duty of Ordinary Care.

Defendants also seek to dismiss Count I of the Complaint on the ground that Defendants owed Plaintiffs no duty and therefore cannot be complained as having acted negligently. Plaintiffs

insist that Defendants owed them a duty when they procured insurance naming Plaintiffs as insureds because "an insurance broker is, by definition, an agent of the insured." Defendants replied that even if they owed a duty of ordinary care to their clients, only the Foundation was Defendants' client, not Plaintiffs.

Both parties overstate their claims. While Plaintiffs are correct that there is some authority in Illinois law that an insurance broker is, by definition, an agent of the insured, Illinois courts do not uniformly follow this authority. *See, e.g., Browder v. Hanley Dawson Cadillac Co.,* 62 Ill. App. 3d 623, 629 (Ill. App. Ct. 1st Dist. 1978) ("Although there is support for the proposition that an insurance broker is by definition an agent of the insured (*Ross v. Thomas,* 45 Ill. App. 3d 705, 360 N.E.2d 126 (1977)), whether a broker is an agent for the insured, the insurer or both is actually a question of fact.").

Of course, granting Defendants' Motion to Dismiss is appropriate "only if no set of facts as pleaded by plaintiff[s] could conceivably state a cause of action." *Browder,* 62 Ill. App. 3d at 629. In this case, Plaintiffs have adequately pleaded a negligence cause of action.

Under Illinois law, an insurance broker owes an insured a duty to "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or

proposed insured." *See,* 735 ILCS 5/2-2201 ("An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured."), and *Skaperdas v. Country Cas. Ins. Co.,* 2015 IL 117021, P20 (Ill. 2015) (noting that the term "insurance producer" subsumes the definition of an "insurance broker"). The parties do not dispute that Defendants were insurance brokers. By the plain text of the statute then, Defendants owed a duty of ordinary care to Plaintiffs.

Defendants argued this duty is owed only to its client, Foundation, and not Plaintiffs. However, the statute does not use the term "client"; rather it refers to "insured or proposed insured" in imposing the duty of ordinary care. There is no dispute that Plaintiffs were additional insureds, and so insureds, on the policy procured by the Foundation.

Defendants have cited no case to the contrary. The one case, *Skaperdas,* that Defendants did cite took it as given that an insurance broker owes a duty of ordinary care to the insured. *Skaperdas,* 2015 IL 117021 at 21. The *Skaperdas* court did not distinguish between an insured who spoke directly with the insurance broker, as the Foundation did, and an insured who did not and was instead named as an additional insured, as Plaintiffs were. Indeed, the plaintiffs in *Skerpadas* included an insured who

dealt directly with the insurance broker (Skaperdas) and an additional insured (Skaperdas's fiancée, Valerie R. Day) who did not. The court did not see any reason to mention this as a difference that mattered for the case and did not distinguish its holding between the two plaintiffs. Defendants' argument that it owed no duty to Plaintiffs is thus unavailing.

### C. Count II is Dismissed Because Plaintiffs Have Not Met the Pleading Requirement to Allege That the Foundation is an Agent of Plaintiffs.

Plaintiffs alleged in Count II of the Complaint that Defendants breached their duty as subagents to Plaintiffs when they "negligently and carelessly failed to procure the proper insurance requested by Foundation and for the benefit of Kindra and Black Diamond." Wrapped up in this claim is the allegation that Defendants were Plaintiffs' subagents.

In their response to Defendants' Motion to Dismiss, Plaintiffs elaborated on this asserted subagency relationship. Plaintiffs stated, "Because there was principal-agent relationship between Foundation and Defendants, and because there was principal-agent relationship between Plaintiffs and Foundation, there was a subagent relationship between Plaintiffs and Defendants." (ECF No. 15, p. 8.) Thus, as Plaintiffs admit, for this claim to survive, Plaintiffs must sufficiently allege not only that Defendants were the Foundation's agents, but also that

the Foundation was an agent of Plaintiffs. This, Plaintiffs failed to do.

Under Illinois law, "[a] complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency." *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 498 (Ill. 1996). Where an agency relationship exists, it may take the form of actual or apparent agency. *See, Zahl v. Krupa,* 365 Ill. App. 3d 653, 660 (Ill. App. Ct. 2d Dist. 2006).

### 1. *Actual Agency*

An agency relationship exists where "the principal has the right to control the manner and method in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Lang v. Silva,* 306 Ill. App. 3d 960, 972 (Ill. App. Ct. 1st Dist. 1999).

Plaintiffs have made no allegation that they had the right to "control the manner and method" by which the Foundation generally "performs its work." As Plaintiffs acknowledged and the CPA made clear, the Foundation had "exclusive control" of the barge and was "treated by the law as the vessel's legal owner" for the period of its lease. *See,* CPA Section 6(f) and Pls.' Resp. Mot. Dismiss, ECF No. 15, n.1. Plaintiffs thus contracted away their right to direct or control the Foundation's use of the barge except as subject to the express terms and conditions of the CPA. *See,* CPA

Section 6(f) ("This Charter is a full and complete demise of the Barge to the Charterer, which shall, at its own expense, navigate and operate the Barge as it if were the owner thereof, but subject to all terms and conditions of this Charter."). These terms and conditions, in turn, did not give Plaintiffs any right to control the daily business of the Foundation.

Furthermore, the Foundation is not alleged to have had the ability to subject Plaintiffs to personal liability. Indeed, it appears that Plaintiffs could not be subject to any liability through the Foundation's actions. The Foundation was required to carry insurance that would "completely protect" Plaintiffs from "any and all liability or loss or damage." CPA Section 9(a). In the event that Plaintiffs suffered "any loss or damage" not covered by insurance, the Foundation was required to make up the deficit. *Id.* More still, the Foundation was obligated to indemnify Plaintiffs for any liability arising from the Foundation's "ownership, chartering, use, operation, custody or maintenance of the Barge." CPA Section 10. This is true even where that liability arose "in whole or in part by the negligence or other fault" of Plaintiff Black Diamond. *Id.* To hold as an agent somebody who is legally responsible for his purported principal's negligence flips the relationship on its head. *See, e.g., Skaperdas,* 2015 IL 117021 at 46 (stating that "a principal

may be held liable for the tortious conduct of an agent" and not the other way around).

The only fact pleaded in Plaintiffs' Complaint that could serve to suggest the Foundation was an agent of the Plaintiffs is the allegation that the Foundation was required under its contract to name Plaintiffs as additional insureds. However, even if proved, this fact cannot in and of itself establish that Foundation was Plaintiffs' agent. In *Oliveira-Brooks v. Re/Max Int'l, Inc.,* 372 Ill. App. 3d 127, 136 (Ill. App. Ct. 1st Dist. 2007), the Illinois Appellate Court rejected the argument that "as a matter of law, evidence of insurance can be used to establish an actual agency relationship where no other evidence of the right to control exists."

The court in *Oliveira-Brooks* reviewed a grant of summary judgment in favor of the defendant, Re/Max International. The case hinged on whether a real estate sales associate by the name of Antonio Nascimento was an agent of Re/Max International. After reviewing the record, the court found that there was no evidence that Re/Max International had the right "to control the manner and method of work of Re/Max Midtown's sales associates, including Nascimento, and could not affect the legal relationships of Re/Max International [sic]." *Oliveira-Brooks*, 372 Ill. App. 3d at 136. Although the record showed that Re/Max International had in place policies related to general duties of a sales associate, the court

considered more persuasive the fact that Nascimento had "complete discretion in the details of his day-to-day real estate sales operation." *Id*. at 135-36.

The court held that "without some indicia of the right to control the day-to-day real estate business operations," the fact that Nascimento was required to obtain his own insurance and name Re/Max International as an additional insured "cannot, as a matter of law, create a genuine issue of material fact to establish an actual agency relationship." *Id.* at 136. The requirement to name Re/Max International as an additional insured was the company's attempt to "shift the risk of loss onto Nascimento" rather than create a principal-agent relationship. *Id.*

Comparing *Oliveira-Brooks* to *Bruntjen v. Bethalto Pizza, LLC,* 385 Ill. Dec. 215 (App. Ct. 2014) makes clear that a contractual obligation to name another as an additional insured saves a claim relying on agency only where there are other allegations of control. In *Bruntjen,* the Illinois appellate court affirmed the decision denying the defendants' motion to dismiss a claim based on an agency relationship. As part of this claim, the plaintiff had alleged (and introduced evidence) that Defendant Imo's "control extended specifically to the pizza delivery drivers," one of whom had collided with the plaintiff in an accident giving rise to the lawsuit. *Bruntjen,* 2014 IL App (5th) 120245 at 86. There was evidence that Imo's mandated pizza delivery, that it

prescribed the minimum delivery areas, and that it bound the stores to adhere to detailed guidelines in "hiring, supervising, and terminating the drivers," *in addition to* requiring that it be named as an insured in delivery drivers' auto insurance policies. *Id.*

In contrast to *Bruntjen,* Plaintiffs in this case have not alleged any more than that the Foundation was required to name them as additional insureds. It is true that in its contract with the Foundation, Black Diamond stipulated that the insurance must be "provided by reputable and solvent underwriters reasonably satisfactory to Owner [Black Diamond]" and that Black Diamond be provided with proof of insurance at some point. However, these requirements do not extend to the "manner and method" by which Foundation was to procure insurance. Instead, as in *Oliveira-Brooks,* the requirement that Plaintiffs be named additional insureds appears to be simply a mechanism to shift risk to Foundation.

In sum, Plaintiffs have failed to plead that the Foundation was their actual agent.

### 2.  *Apparent Agency*

While actual agency focuses directly on the relationship between the purported principal and agent, apparent agency looks at this relationship from the perspective of a third party. To establish apparent agency, a plaintiff must plead facts that, if

proved, would show that "(1) that the principal held the agent out as having authority or knowingly acquiesced in the agent's exercise of authority; (2) based on the actions of the principal and agent, the third person reasonably concluded that an agency relationship existed; and (3) the third person relied on the agent's apparent authority to his detriment." *Oliveira-Brooks,* 372 Ill. App. 3d at 137. Moreover, "[o]nly the alleged principal's words or conduct, not those of the alleged agent, establish the agent's authority." *Kaporovskiy v. Grecian Delight Foods, Inc.,* 338 Ill. App. 3d 206, 210 (2003).

In their filings before the Court, Plaintiffs have expressly disavowed that there was apparent agency in this case. By Plaintiffs' theory of their own case, "*Oliveira-Brooks v. Re/Max Intern. Inc.* is inapposite, because it deals with a third person, outside the agency relationship, relying upon an apparent relationship to his or her detriment, *factual circumstances which are not present in this case.*" ECF No. 15, p. 11 (emphasis added). Indeed, Plaintiffs' Complaint is devoid of any mention that Plaintiffs held the Foundation out to a third party to be Plaintiffs' agent. While Plaintiffs alleged that the Foundation acted on Plaintiffs' behalf, Plaintiffs did not claim to have taken any action themselves to communicate the Foundation's role to third parties. There is thus no allegation of apparent agency.

The Court dismisses Count II of the Complaint on the ground that Plaintiffs have failed to plead an agency relationship between themselves and the Foundation. As such, the Court will not address Defendants' alternative argument that Count I and Count II should be dismissed as duplicative.

### D. Count III is Dismissed by the Parties' Consent.

Plaintiffs have requested to withdraw Count III of its Complaint. (ECF No. 15, p. 12.) The Court hereby grants this request.

### E. Count IV

Count IV of the Complaint is a breach of contract claim. Plaintiffs bring the claim as intended third-party beneficiaries to the agreement between the Foundation and Defendants to procure insurance. Defendants have not argued for dismissal of this claim except as part of its waiver argument to dismiss the entire Complaint. Because the Court rejects Plaintiffs' waiver argument, Count IV may go forward.

### F. Standing Issues

In response to Plaintiffs' argument against waiver, Defendants raised an entire new argument: that Plaintiffs have suffered no injury. *See,* Defs.' Reply Supp. Mot. Dismiss 3-4, ECF No. 16. This, Defendants say, is due to the fact that the CPA required the Foundation to make up any losses to Black Diamond that were not paid for by insurance. *Id.*

This line of attack is not properly an argument about waiver but Plaintiffs' standing to bring the suit. *See,* 15-101 *Moore's Federal Practice - Civil* § 101.40 (2015) ("Standing Requires Injury-in-Fact"). If Defendants wish to raise a standing issue at this point, they should bring a motion before the Court. This may be appropriate as this case may not be ripe given the declaratory judgment action that is now stayed before Judge Blakey.

### III.  CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is granted in part and denied in part.

**IT IS SO ORDERED.**


_____
　　　Harry D. Leinenweber, Judge
　　　United States District Court

Dated: SEP 2 0 2016