IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KINDRA LAKE TOWING, L.P., and BLACK DIAMOND MARINE EQUIPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DONAT INSURANCE SERVICES, LLC, and KEN DONAT, <br><br> Defendants. | Case No. 16 C 3916 <br><br> Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

The Defendants' self-styled Motion for Judgment on the Pleadings [ECF No. 23] is granted. The Complaint is dismissed without prejudice with permission to refile if and when the dispute ripens.

**I. BACKGROUND**

The facts of this case, which involved the sinking of a haunted house on a dark and stormy night, were discussed at length in the Court's last memorandum opinion. *See, Kindra Lake Towing, L.P. v. Donat Ins. Servs., LLC,* No. 16 C 3916, 2016 U.S. Dist. LEXIS 129803, at *1-6 (N.D. Ill. Sep. 20, 2016). Suffice it to recount that Plaintiffs Kindra Lake Towing and Black Diamond Marine Equipment ("Plaintiffs") had chartered a barge to

non-party Foundation Theatre Group ("Foundation"). Plaintiffs contractually required Foundation to carry insurance for the vessel, and Foundation turned to the Defendants, Donat Insurance Services, LLC, and its owner, Ken Donat (the "Defendants"), for insurance brokerage services. Defendants procured for Foundation a policy underwritten by Capitol Indemnity Corporation. The policy named both Foundation and Plaintiffs as insureds.

The barge, carrying Foundation's staged haunted house, was then docked at Navy Pier. On Halloween 2014, a storm sunk the barge. On its heel followed three federal lawsuits. The interactions of these lawsuits, the last of which is the case before this Court, are important for the resolution of the motion at hand. The Court thus delves into them in some detail.

The first lawsuit, filed before District Judge Thomas M. Durkin, is a declaratory judgment action brought by Plaintiffs. *See, In re Kindra Lake Towing, L.P.,* No. 15 C 03174 (filed Apr. 4, 2015). In this lawsuit ("the Durkin suit"), Plaintiffs seek to have the court declare that Plaintiffs are not liable to any party for any losses that arose out of the sinking of the barge. *See, id.,* ECF No. 1 ¶¶ 13-15, 24. Foundation and Navy Pier both counterclaim against Plaintiffs. *See, id.,* ECF Nos. 38-39. Foundation seeks damages for its lost haunted house

and lost profits in the amount of $375,000.00, while Navy Pier claims $600,000.00 in damages to its dock. *See, id.,* ECF No. 38 at pp. 13-21 (Foundation's Countercl.); ECF No. 39 ¶¶ 13, 21, 29, 35 (Navy Pier's Countercl.).

Importantly, Plaintiffs (and their insurers) also bring a claim for money damages against Foundation as part of the Durkin suit. *See, id.,* ECF No. 24 ("Plaintiffs' Counterclaims against Foundation"). The damages that Plaintiffs seek in that complaint are precisely those that they seek against Defendants in the case before this Court. In particular, Plaintiffs allege that: "As a result of said breaches of contract by Foundation Theatre, the Claimants [Plaintiffs and their insurers] have suffered damages well in excess of $1,500,000 arising out of the damages suffered by [the barge] *TMS 200*, the salvage of said barge and the containers from the bottom of Lake Michigan, transportation fees, surveyor fees, loss of use, storage fees, prejudgment interest, and legal fees." *Id.* ¶ 19. Wherefore, Plaintiffs pray for damages "well in excess of $1,500,000." *Id.* ¶¶ 21, 26.

The second lawsuit, pending before Judge John Robert Blakey, is a declaratory action brought by Capitol Indemnity Corporation. *See, Capitol Indemnity Corporation v. Foundation Theatre Group,* No. 15 C 09735 (filed Oct. 30, 2015) ("the Blakey

suit"). Capitol, the underwriter behind the insurance policy Defendants procured, requests a judgment declaring that its policy does not provide "coverage, either defense or indemnity . . . for FTG [Foundation Theatre Group], Navy Pier, Kindra, and Black Diamond for . . . the damages alleged in th[e] [Durkin] Action." *Id.,* ECF No. 1 ¶ 41. Capitol prays for this relief on the basis of various exclusionary clauses written into the insurance policy, including a clause excluding coverage for "watercraft" (Exclusion G) and one excluding "property damage" coverage for "property [that] you own, rent or occupy," "property loaned to you," and "personal property in the care, custody or control of the insured" (Exclusion J). *Id.* ¶ 32.

In short, Capitol seeks a declaration that it is not liable for any damage awards that may flow from the Durkin lawsuit. That lawsuit, as will be recalled, includes the claim for $1.5 million that Plaintiffs brought against Foundation. Both Foundation and Plaintiffs are contesting and making counterclaims against Capitol in the Blakey action. *See, id.,* ECF Nos. 28 and 37.

Finally, the third and latest filed suit is the one before this Court. In this case, Plaintiffs are suing the Defendant insurance brokers on the theory that Defendants caused Plaintiffs harm by failing "to place the proper and correct

insurance [as] requested by Foundation." *Kindra Lake Towing, L.P. v. Donat Ins. Servs., LLC,* No. 16 C 03916, ECF No. 1 (Compl.) ¶ 30. Plaintiffs allege that their "damages and losses . . . are still being calculated, but will be in excess of $1,500,000.00, including damage sustained to the barge TMS-200 ('the Vessel'), salvage costs, loss of use, attorneys' fees, pre-judgment interest, and other expenses." *Id.* ¶¶ 31, 52. Elsewhere in their filings before the Court, Plaintiffs clarify that the damages they seek include both "1) property damage for the loss of their vessel and the associated costs relating to salvage and cleanup, and 2) liability exposure for the cost of defending themselves against lawsuits from Navy Pier and Foundation and potential damage awards." *See,* ECF No. 28 (Pl.'s Resp. to Defs.' Mot.) at 5.

The Defendants now move for the Court to dismiss the Complaint on the grounds that Plaintiffs will suffer injuries only if the Durkin and Blakey lawsuits are resolved against them. As such, either Plaintiffs lack standing to sue or their claims are not yet ripe for adjudication. For the reasons stated herein, the Court finds that dismissal is appropriate at this stage.

## II. ANALYSIS

In addition to arguing for standing and ripeness, Plaintiffs urge that the Court deny the Motion because it is untimely. The Court thus addresses this procedural argument before reviewing the merits of Defendants' Motion.

### A. Timeliness

Plaintiffs complain that Defendants' Motion is brought either too soon or, alternatively, too late. The Court agrees that as a Rule 12(c) Motion for Judgment on the Pleadings, Defendants' Motion is premature because the pleadings have not closed.

Under Rule 12(c), "a party may move for judgment on the pleadings" only "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). The pleadings have not closed in this case because Defendants have not answered the Complaint. *See,* FED. R. CIV. P. 7(a) (specifying that pleadings include a complaint and an answer to a complaint); *Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1336-37 (11th Cir. 2014) ("When a defendant fails to answer, Rule 12(c) precludes a judgment on the pleadings because the pleadings have not yet closed, and competing pleadings do not exist."); *N. Ind. Gun & Outdoor Shows v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) ("Rule 12(c) permits a party to move for judgment *after* the parties have filed the complaint

and answer.") (emphasis added).  Defendants' Motion thus cannot be considered a Motion for Judgment on the Pleadings.

Nonetheless, the Court finds that the Motion may be construed as a Rule 12(b)(1) Motion to Dismiss for lack of subject-matter jurisdiction.  *Cf., Wouk v. Mondi Packaging USA Inc.*, No. 13 C 1932, 2014 U.S. Dist. LEXIS 7848, at *1-2 n.2 (N.D. Ill. Jan. 22, 2014) ("Because Mondi has not yet filed an answer to Wouk's retaliatory discharge claim, the Court will consider Mondi's motion under Federal Rule of Civil Procedure 12(b)(6) and not Rule 12(c).").  Defendants in their Motion challenge both Plaintiffs' standing and the ripeness of their claims, both (arguably) jurisdictional matters.  *See, e.g., Smith v. Wis. Dep't of Agric.*, 23 F.3d 1134, 1142 (7th Cir. 1994) ("Standing and ripeness are jurisdictional prerequisites.").  The Court thus treats the Motion as a Rule 12(b)(1) motion.

Plaintiffs raise a second timeliness argument, this time contending that Defendants' Motion is too late.  Citing to Rule 12(g), they assert that Defendants have "waived all of their arguments by failing to bring them as part of their previous Rule 12(b)(6) motion to dismiss."  ECF No. 28 (Pl.'s Resp. to Defs.' Mot.) at 2-3.  It is true that Defendants

previously have filed a 12(b)(6) motion.  *See,* ECF No. 11.  At first glance then, Rule 12(g)(2) looks relevant.

Rule 12(g)(2) states that:  "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Relying on the rule, some courts have precluded litigants from making arguments that they failed to raise in previously filed motions.  *See, e.g., Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* No. 02 C 4356, 2008 U.S. Dist. LEXIS 41539, at *8 (N.D. Ill. May 23, 2008); *766347 Ontario, Ltd. v. Zurich Capital Mkts., Inc.,* 274 F.Supp.2d 926, 930 (N.D. Ill. 2003).  *But see, Donnelli v. Peters Secs. Co., L.P.,* No. 02 C 0691, 2002 U.S. Dist. LEXIS 16305, at *10-12 (N.D. Ill. Aug. 28, 2002) (allowing a second pre-answer motion because the "defendants' motion was not filed for the purpose of delay and th[e] adjudication of the instant motion will narrow the scope of this matter, greatly expediting resolution of the case").

However, because the current Motion raises jurisdictional issues, Rule 12(g) is no barrier to its consideration.  Rule 12(g) exempts from its proscription those motions that fall within the scope of Rule 12(h)(2) or (3).  Rule 12(h)(3), in turn, speaks to subject-matter jurisdiction.  It requires the

Court to dismiss the case if "at any time," the Court finds that it lacks such jurisdiction. Accordingly, the Court is obligated to inquire into the subject-matter arguments that Defendants raised. Their arguments are not waived for the simple reason that subject-matter jurisdiction cannot be waived. *See, e.g., Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 179 (7th Cir. 1994) ("Subject matter jurisdiction cannot be waived and may be challenged by a party or raised *sua sponte* by the court at any point in the proceedings.").

**B. Standing**

Defendants assert that Plaintiffs do not have standing to bring the current suit because "Plaintiffs' Complaint only alleges the potential for future damages, and such damages do not constitute an immediate injury for purposes of standing." ECF No. 24 at 4. As Defendants explain, "a series of events must occur" before Plaintiffs incur any actual damages: Judge Blakey must rule for Capitol and against Plaintiffs by determining that the insurance issued to Foundation indeed does not provide coverage for the sinking of the barge and related damages, and Judge Durkin must find that Plaintiffs are liable for the losses related to the barge sinking. *Id.* at 4-5.

The Court is of the view that Defendants' contentions should be properly seen as an argument that Plaintiffs' claims

have not ripened rather than that Plaintiffs do not have standing to bring them. Defendants' labeling of their arguments as falling under both doctrines is understandable given that "[a]lthough the doctrines of standing and ripeness ostensibly require different inquiries, they are closely related, and in cases . . . perhaps overlap entirely." *Sierra Club v. Marita,* 46 F.3d 606, 610 (7th Cir. 1995). At bottom, however, Defendants' argument is that Plaintiffs' claimed injuries hinge on future events. Whether Plaintiffs have been injured, say Defendants, will only be known after Judges Durkin and Blakey rule. Plaintiffs' injuries thus are contingent on the unfolding of the parallel litigation, and such contingencies raise concerns of ripeness. *See, e.g., Wis. Right to Life State PAC v. Barland,* 664 F.3d 139, 148 (7th Cir. 2011) ("Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all."); *Marusic Liquors v. Daley,* 55 F.3d 258, 260 (7th Cir. 1995) ("A claim is unripe when critical elements are contingent or unknown.").

Put differently, how Judges Durkin and Blakey will rule cannot be known at this point in time, but the judges certainly will rule (presumably within the near future, as both cases are now over a year old) and their rulings will settle the question of Plaintiffs' injuries. Therefore, the concern is one of

timing – this Court must decide whether to address Plaintiffs' claims now or later – a classic issue to be addressed by ripeness principles. *See, e.g., Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 140 (1974) ("[R]ipeness is peculiarly a question of timing . . ."); *Amundson v. Wis. Dep't of Health Servs.,* 721 F.3d 871, 874 (7th Cir. 2013) ("Ripeness is a matter of timing . . ."); *Anders v. Fort Wayne Cmty. Schs.,* 124 F.Supp.2d 618, 630 (N.D. Ind. 2000) ("[Ripeness] is a question of timing.") (citing *Blanchette v. Connecticut General Ins. Corporations,* 419 U.S. 102, 143 (1974); *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, (1962)). The Court thus analyzes this Motion under the rubrics of that doctrine.

### C. Ripeness

To determine whether a claim is ripe, a court considers "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 732-33 (1998) (internal quotation marks omitted).

The issue before the Court – whether Defendants failed to obtain the proper insurance – is not fit for judicial review. Whether the insurance is proper is a question pending before Judge Blakey. Recall that in that lawsuit, Capitol is seeking a declaratory judgment that the insurance Defendants obtained from

Capitol does not cover the damages resulting from the sinking of the barge. The opposing parties, including Plaintiffs, are requesting the opposite declaration. Thus, if Plaintiffs win, then Capitol's insurance policy will cover Plaintiffs' losses. In that eventuality, Plaintiffs cannot say that the policy was improper or that Defendants have failed to procure the proper insurance. Put differently, if the Court were to proceed with this litigation, then a favorable decision for Plaintiffs may be inconsistent with what Judge Blakey finds.

To rescue their case, Plaintiffs argue that the Blakey lawsuit does not concern the losses Plaintiffs seek here. Plaintiffs say that in this case they are looking to recover the value of their barge and their out-of-pocket salvage costs. In contrast, the Blakey lawsuit is about whether Capitol must defend and indemnify them for the claims that other parties are bringing against them – that is, the $375,000.00 demanded by Foundation and $600,000.00 by Navy Pier.

Plaintiffs' attempt to distinguish the two lawsuits contradicts what they pleaded in their Complaint. In the Complaint, Plaintiffs alleged that, "[s]hould a judgment be entered in the declaratory judgment action in favor of Cap Specialty, it will be because Donat did not procure the correct insurance coverage requested by Foundation." ECF No. 1 (Compl.)

¶ 22. Plaintiffs thus blame Defendants for the injuries being litigated in the Blakey lawsuit. Yet they now say that they are not seeking to recover against Defendants for the claims at issue in that suit. The two assertions are difficult to reconcile. The more sensible conclusion is that Plaintiffs are looking to recover for the same (or overlapping) injuries in the two lawsuits and these injuries include Foundation's and Navy Pier's near $1 million demands.

Such a conclusion is bolstered by Plaintiffs' briefing on this Motion. As Plaintiffs stated in their brief: "The instant suit seeks damages from Defendants, as insurance brokers, for exposing Plaintiffs directly with respect to the losses alleged in its complaint; namely 1) property damage for the loss of their vessel and the associated costs relating to salvage and cleanup, and 2) liability exposure for the cost of defending themselves against lawsuits from Navy Pier and Foundation and potential damage awards." ECF No. 28 (Pl.'s Resp. to Defs.' Mot.) at 5. The second category of damages that Plaintiffs are seeking in this lawsuit is exactly what they say is at issue in the Blakey lawsuit: the defense and indemnification of Navy Pier and Foundation's claims against them.

Moreover, it is not so clear to the Court that Plaintiffs in the Blakey lawsuit are not seeking relief for the first

category of damages alleged in this suit, namely "property damage for the loss of their vessel and the associated costs relating to salvage and cleanup." Among other things, the parties in that case are fighting about Exclusion J, the exclusion concerning "property damage" to property that an insured owns. The Court can see only two pieces of property that fit that description: the barge that Plaintiffs owned and lost, and the haunted house that Foundation owned and Plaintiffs salvaged. The fact that Exclusion J is in dispute in the Blakey lawsuit suggests that Plaintiffs in that case may be looking to recover for more than just Navy Pier's and Foundation's claims.

Finally, even if the Court takes Plaintiffs at their word that the Blakey lawsuit concerns only the underlying claims that the parties have against one another and this lawsuit does not seek compensation for those claims, still the cases are inextricably intertwined. This is because one of the underlying claims is the claim Plaintiffs made against Foundation, asking for the same $1.5 million in damages that Plaintiffs are here seeking against Defendants.

Not only is Plaintiffs' lawsuit against Defendants unfit for judicial review because of the parallel litigation and the potential for inconsistent judgments, but Plaintiffs also are unlikely to suffer hardships should the Court defer review.

Plaintiffs' only losses are money damages. The time that Plaintiffs may have to wait to recoup that money may be made up for by awarding pre-judgment interest, a relief that Plaintiffs have requested in this case. As such, there is no harm from waiting that is not fully compensable and no hardship from waiting. Plaintiffs' claims are unripe under both factors examined in the *Ohio Forestry* ripeness analysis.

The case law supports the conclusion that Plaintiffs' claims are premature. The facts of Plaintiffs' case are similar to those found in *KDI Corp. v. Alexander & Alexander Servs., Inc.*, No. 88 C 10363, 1990 U.S. Dist. LEXIS 11177 (N.D. Ill. Aug. 23, 1990). In *KDI,* plaintiffs KDI and their affiliates were insured under a policy procured by the defendant insurance brokers. *Id.* at *1. The underwriter to the insurance policy, MFMI, had entered rehabilitation and "refused to honor the obligations . . . under its policies to defend plaintiffs and to pay claims against them." *Id.* at *2-3. As a result of MFMI's refusal to pay, the plaintiffs had to pay claims made against them. *Id.* at *3. They then sued their insurance brokers in a declaratory judgment action, bringing the same causes that Plaintiffs here assert against Defendants. *Id.* (stating that KDI alleged a breach of contract and a "negligence/malpractice

as plaintiffs' agent" claim against the insurance brokers) (internal quotation marks omitted).

The court dismissed KDI's lawsuit for being unripe. *KDI Corp.*, 1990 U.S. Dist. LEXIS 11177 at *7. It reasoned that KDI "might recover all monies owed to them by MFMI during the course of the rehabilitation proceedings." *Id.* at *6. "If that future contingency occurs," continued the court, "plaintiffs will have no claims against defendants because they will have suffered no cognizable damages." *Id.* The court found irrelevant the fact that KDI had already paid for covered claims against them since "[t]hese out-of-pocket losses may be recovered by plaintiffs, along with any other monies to which they are entitled, in the rehabilitation proceedings." *Id.* at *7. Only "if plaintiffs do not realize such a recovery," can they "then reassert the claims which they attempt to assert here." *Id.*

Plaintiffs' case is much like that rejected in *KDI*. Plaintiffs are suing their insurance brokers when they may still recover any "out-of-pocket losses" and "all monies" against the insurer Capitol (or Foundation). If the Court were to rule for Plaintiffs and find Defendants liable, still Plaintiffs will not know for how much Defendants are liable until the underlying claims are resolved. More still, it may it that Defendants own Plaintiffs nothing once those claims are resolved. Given such

unknown contingencies, the Court follows persuasive case law and finds that it should dismiss Plaintiffs' suit. *See, Lane v. Stephenson,* Case No. 96 C 5565, 1996 U.S. Dist. LEXIS 18346, at *9 (N.D. Ill. Dec. 4, 1996) (dismissing a case on ripeness grounds when "the existence of the plaintiffs' claimed injuries is contingent on the scope of the [ongoing] state court proceedings"); *Hartford Cas. Ins. Co. v. Borg-Warner Corp.,* 913 F.2d 419, 424 (7th Cir. 1990) (stating in dictum that "Hartford's complaint raises ripeness problems [since] the amount and existence of Hartford's damages depend[] on the outcome of the state rehabilitation proceedings").

Cases that Plaintiffs cite do not persuade the Court to the contrary. Plaintiffs rely entirely on out-of-district cases, the most relevant of which is *Great Lakes Reinsurance (UK) PLC v. Roca,* No. 07-23322-CIV-MORE, 2008 U.S. Dist. LEXIS 125388 (S.D. Fla. Dec. 11, 2008). In *Great Lakes,* a district court from the Southern District of Florida performed a ripeness analysis using the test formulated in *Ohio Forestry*. It ultimately rejected the defendants' ripeness argument because dismissing some, but not all, of the claims from the case would complicate the litigation. As the court explained, dismissal "would surely cause hardship to the Rocas as it would force them to maintain two separate lawsuits," whereas "allowing these

claims to proceed will [] benefit judicial economy by consolidating factually related claims in one action." *Id.* at *5.

Here, we have the opposite situation: there are now three lawsuits outstanding and dismissing Plaintiffs' case would cut that number, not force Plaintiffs to "maintain two separate lawsuits" where there only was one previously. Moreover, allowing Plaintiffs' claims to proceed will result in judicial diseconomy due to the potential for inconsistent judgments. The factors considered in *Great Lakes* thus favor dismissal in this case.

One last issue must be addressed. Whether ripeness is a jurisdictional issue is matter of some disagreement in this circuit. *Compare, Cent. States v. Am. Int'l Grp., Inc.,* 840 F.3d 448, 451 n.2 (7th Cir. 2016) ("The Supreme Court has held that ripeness is a jurisdictional question."), *with Medline Indus. v. Ram Med., Inc.,* 892 F.Supp.2d 957, 963 n.4 (N.D. Ill. 2012) ("The Seventh Circuit, however, has made clear that ripeness concerns the 'appropriate exercise of discretion rather than the limits of judicial power' and that when a suit is not ripe it should be dismissed in the exercise of the court's discretion rather than for lack of jurisdiction.") (quoting

*Brandt v. Vill. of Winnetka,* 612 F.3d 647, 649-51 (7th Cir. 2010)).

In this Court's judgment, the disagreement is not more than superficial. It is true that Judge Easterbrook held in *Brandt* that the dismissal for lack of ripeness was an exercise of the district court's discretion rather than a requisite demanded by Article III. *See, Brandt,* 612 F.3d at 649-51. However, as Judge Easterbrook explained elsewhere, ripeness, in some cases, does implicate the case-or-controversy requirement of Article III and so is properly treated as a jurisdictional matter. *See, Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 538 (7th Cir. 2006) (stating that "a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies – and this aspect of ripeness is part of the case-or-controversy requirement"). As far as the Court can tell then, Judge Easterbrook's stand is that ripeness is not categorically a jurisdictional issue, not that it is never a question of jurisdiction.

In either event, the distinction does not make much of a difference for a district court. Whether dismissing for lack of ripeness is a matter of discretion or a constitutional requirement matters for the standard of review, but it does not change what the district court should do when it is convinced

that the case is unripe: it should dismiss. Accordingly, the Court dismisses Plaintiffs' Complaint in its entirety.

### III. CONCLUSION

For the reasons stated herein, the Defendants' Motion [ECF No. 23] is granted. The Complaint is dismissed without prejudice with permission to refile if and when the dispute ripens.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Dated: February 15, 2017